IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 03-80829

CIV - DIMITROULEAS

MAGISTRATE JUDGE
SELTZER

MERRILL LYNCH, PIERCE, FENNER & SMITH INC.,

Plaintiff,

v.

CHRISTOPHER B. KELLY

Defendant.

_______________________________/

## COMPLAINT

Merrill Lynch, Pierce, Fenner & Smith Inc. ("Merrill Lynch"), by its undersigned attorneys, hereby brings the following Complaint for injunctive relief against Christopher B. Kelly ("Kelly") for: (i) breach of contract; (ii) misappropriation of trade secrets; (iii) breach of fiduciary duty; and (iv) unfair competition, and in support thereof avers as follows:

### I. PARTIES

1. Merrill Lynch is a Delaware corporation maintaining its principal place of business at World Financial Center, North Tower, New York, New York and transacting business in this judicial district at 2301 S.E. Monterey Road, Stuart, Florida 34996.

2. Merrill Lynch is a citizen of the States of Delaware and New York.

3. Kelly is a former financial advisor and employee of Merrill Lynch's Palm Beach Gardens, Florida office. Kelly currently resides at 6145 Dania Street, Jupiter, Florida 33458. Kelly is a citizen and resident of the State of Florida.

## II. JURISDICTION AND VENUE

4. Jurisdiction exists by virtue of diversity of citizenship, 28 U.S.C. § 1332. The amount in controversy exceeds Seventy-five Thousand Dollars ($75,000), exclusive of interest and costs. Immediate injunctive relief is sought pursuant to Federal Rule of Civil Procedure 65(a). Venue is proper in this judicial district under 28 U.S.C. § 1391(a), as it is the district in which the conduct complained of arose and in which Defendant resides.

## III. THE FACTS

5. Merrill Lynch is engaged in the business of, inter alia, providing financial services.

6. Kelly commenced his employment with Merrill Lynch on or about July 2000.

7. As a specific condition of his employment with Merrill Lynch, Kelly executed an employment agreement known as a Financial Consultant Employment Agreement and Restrictive Covenants ("Agreement"). A copy of Kelly's Agreement is attached hereto, made part hereof, and marked as Exhibit **"A"**.

8. In pertinent part, the terms, conditions and provisions of Kelly's Agreement provided that Merrill Lynch agreed to:

(a) employ Defendant in a sales capacity for a sales position;

(b) pay Defendant while he was trained and employed in said sales capacity;

(c) provide Defendant with opportunities, support services, and facilities; and

(d) provide other good and valuable consideration.

9. Merrill Lynch provided the above consideration to Kelly and has satisfied all conditions precedent.

10. More specifically, Merrill Lynch compensated Kelly at all times during his employment with Merrill Lynch, provided him with intensive introductory training and/or continuous on-the-job training throughout his employment with Merrill Lynch, provided Kelly with extensive support services, paid for facilities, computer equipment, market reporting services, and all other business expenses, provided Kelly with abundant sales opportunities, registered Kelly with the New York Stock Exchange, National Association of Securities Dealers, the American Stock Exchange, and the Florida state securities commission, and provided him with all Merrill Lynch benefits, systems, resources and support at all times.

11. In addition to the foregoing, Merrill Lynch provided Kelly with office facilities, secretarial services, clearing services, operational systems, product inventory, sales assistants, research, the benefit of Merrill Lynch advertising, goodwill and name recognition, access and use of experts in asset management, tax, estate planning and insurance, and promotional marketing and sales support.

12. In addition to the foregoing, Merrill Lynch provided Kelly with customer accounts, customer referrals, reassignments of former and current Merrill Lynch

accounts, customer leads and new accounts generated by Merrill Lynch's national advertising campaign, from local seminars, from mailers, from "walk-in" and "call-in" customers, and from lists purchased and acquired by Merrill Lynch, and access and use of confidential records relating to these accounts.

13. By virtue of Kelly's employment at Merrill Lynch, he gained access to the books and records of Merrill Lynch, the confidential information contained therein, and especially the identity of Merrill Lynch customers, including their names and addresses, financial statements, investment objectives, assets, net worth, investment histories, and the securities held by these customers in their Merrill Lynch accounts.

14. As a result of the foregoing, Kelly specifically acquired information and records that revealed the names and addresses and confidential information for hundreds of Merrill Lynch accounts, representing over **$24 million** in assets under Merrill Lynch management. These accounts generated over **$173,000** in commission revenues for Merrill Lynch in last twelve months alone.

15. In consideration of and in exchange for the foregoing benefits and opportunities provided by Merrill Lynch, Kelly agreed in his Financial Consultant Employment Agreement and Restrictive Covenants that:

> 1. **All records, whether original, duplicated, computerized, memorized, handwritten, or in any other form, and all information contained therein, including names, addresses, phone numbers, and financial information of any account, customer, client, customer lead or prospect ("Account"), are confidential and are the sole and exclusive property of Merrill Lynch**. This information, whether provided to me by Merrill Lynch or by any Account, is entrusted to me as an employee and sales representative of Merrill Lynch. I will not use this information or remove any such records from the Merrill

> Lynch office except for the sole purpose of conducting business on behalf of Merrill Lynch. **I agree not to divulge or disclose this information to any third party and under no circumstances will I reveal or permit this information to become known by any competitor of Merrill Lynch either during my employment or at any time thereafter.**
>
> This information is extremely valuable to Merrill Lynch and Merrill Lynch takes all reasonable measures to maintain its confidentiality and to guard its secrecy. This information is not generally known outside Merrill Lynch and within Merrill Lynch this information is confidential and used only on a "need to know" basis. This information is developed and acquired by great expenditures of time, effort, and money. This information is unique and cannot be lawfully duplicated or easily acquired. Consequently, I agree that these records and the information contained therein are the property of Merrill Lynch and are deserving of trade secret status and protection.
>
> 2. **If, at any time, I resign from Merrill Lynch**, provoke my termination, or am terminated for cause, **I agree that for a period of one year following my termination I will not solicit by mail, by phone, by personal meeting, or by any other means,** either directly or indirectly, **any Account whom I served or whose name became known to me during my employment at Merrill Lynch in any office and in any capacity**. My agreement "not to solicit" means that I will not, during my employment and for a period of one year thereafter, initiate any contact or communication, of any kind whatsoever, for the purpose of inviting, encouraging or requesting any Account:
>
> (a) to transfer from Merrill Lynch to me or to my new employer, or
>
> (b) to open a new account with me or with my new employer, or
>
> (c) to otherwise discontinue its patronage and business relationship with Merrill Lynch.

(See Exhibit **"A"** at ¶¶ 1-2) (emphasis added in part).

16. In addition, Kelly expressly consented in his employment agreement to the issuance of a temporary restraining order and a preliminary injunction by this Court in the event of a breach of the terms of his employment contract:

> **4. In the event I breach any of the covenants of paragraphs 1, 2 or 3, I agree that Merrill Lynch will be entitled to injunctive relief.** I recognize that Merrill Lynch will suffer immediate and irreparable harm and that money damages will not be adequate to compensate Merrill Lynch or to protect and preserve the status quo. Therefore, **I CONSENT TO THE ISSUANCE OF A TEMPORARY RESTRAINING ORDER or A PRELIMINARY or PERMANENT INJUNCTION ordering:**
>
> (a) **that I immediately return to Merrill Lynch all records whether original, duplicated, computerized, handwritten, or in any other form whatsoever, and that I be enjoined and restrained from using or disclosing any information contained in such records; and**
>
> (b) **that, for a period of one year, I be enjoined and restrained from soliciting any Account whom I served or whose name became known to me while employed by Merrill Lynch, in any office and in any capacity; and**
>
> (c) **that I be further enjoined and restrained, for a period of one year, from accepting business from any Account who was solicited in violation of paragraph 2 or whose records and information was used in violation of paragraph 1.**
>
> 5. For the purposes of paragraph 4, I agree to submit to, and confer exclusive jurisdiction on, the United States District Court or the State Court which has original jurisdiction for judicial district or county in which I last worked for Merrill Lynch. This Agreement shall be construed, governed by, and enforced in accordance with the laws of said jurisdiction.

(See Exhibit **"A"** at ¶¶ 4-5) (emphasis added in part).

17. Kelly also agreed, on an annual basis, to abide by Merrill Lynch's Compliance Outline for Private Client Financial Advisors, which provides, in pertinent part, as follows:

> **PRIVACY POLICY – CONFIDENTIALITY OF CLIENT INFORMATION**
>
> Merrill Lynch protects the confidentiality and security of client information. Employees must understand the need for the careful handling of this information. Merrill Lynch's privacy policy provides that
>
> - We do not sell or rent clients' personal information.
> - Employees may not discuss the business affairs of any client with any other employee, except on a strict need-to-know basis.
> - We do not release client information, except upon a client's authorization or when required by law.
> - Third-party service providers with access to client information are subject to the Merrill Lynch Privacy Policy.
>
> Questions concerning the confidentiality or security of client information should be directed to your manager, Compliance Officer, or the Office of General Counsel.

(See Exhibit **"B"** attached hereto)

18. Kelly also agreed to comply with Merrill Lynch's Guidelines for Business Conduct, which states as follows:

> Merrill Lynch's assets include more than capital; they also include its facilities, equipment, **information**, technology, business plans, ideas for new products and services, **trade secrets**, inventions, copyrightable materials, and **client lists**. It is critical that all employees safeguard such assets in accordance with corporate policies. Employees are expected to use company assets only for the purposes intended -- never for their own personal benefit, except when particular assets are approved for general employee or public use. This policy extends even to business opportunities that come to employees as a result of their

> employment. These are considered proprietary opportunities belonging to Merrill Lynch. Employees should be aware that state and federal laws, regulatory controls, and contractual and licensing obligations for such assets govern our actions as well as the actions of the company's vendors and consultants.
>
> The policies on inside information are not limited to the securities area. All employees must exercise equal care not to misuse any non-public corporate information, **including client lists**, information about Merrill Lynch personnel, and business plans and ideas.

(See Exhibit **"C"** attached hereto)(emphasis added).

19. Lastly, Kelly also agreed to abide by Merrill Lynch's Conflict of Interest agreement, which provides in relevant part as follows:

> I agree that I will not, **during or after** my employment with Merrill Lynch, use or disclose to another any confidential information or business secrets relating to Merrill Lynch.

(See Exhibit **"D"** attached hereto) (emphasis added).

20. Kelly resigned, without advance notice, from Merrill Lynch on Friday, August 15, 2003, and immediately joined Banc of America Investment Services Incorporated, ("Banc of America"), a competing securities industry firm located nearby.

21. Merrill Lynch believes and therefore avers that Kelly has wrongfully converted Merrill Lynch records and is secretly attempting to divert Merrill Lynch customers to his new employer, Banc of America.

22. Merrill Lynch believes and therefore avers that Kelly has prepared to engage in, has engaged in, and continues to engage in, inter alia, the following acts:

(a) transmitting verbally, in writing, or in some other manner, to his new employer and/or others, the clients' names, addresses, and other confidential information contained in the records of Merrill Lynch;

(b) soliciting and/or preparing to solicit Merrill Lynch's clients to terminate their relationship with Merrill Lynch and transfer their accounts to Banc of America; and

(c) other such acts contrary to the terms, conditions, and provisions of his Financial Consultant Employment Agreement and Restrictive Covenants, and other Merrill Lynch policies and guidelines.

23. Kelly's conduct represents an attempt to obtain and to convert to his personal use and gain the records of Merrill Lynch, the property of Merrill Lynch, the names, addresses and confidential customer information used to conduct business at Merrill Lynch, Merrill Lynch marketing and promotional techniques, and the goodwill generated, directly and indirectly, by Kelly's association with Merrill Lynch, and to do so by means of, inter alia, solicitation of clients of Merrill Lynch serviced by Kelly and whose names became known to him while in the employ of Merrill Lynch.

Merrill Lynch believes and, therefore, avers that:

(a) Kelly has possession, custody, or control of Merrill Lynch records, Merrill Lynch documents, confidential customer information, Merrill Lynch proprietary information, and lists of Merrill Lynch customer accounts and account information for customers, including names, addresses, telephone numbers and special investment information of said Merrill Lynch customers;

(b) Kelly has used, and will continue to use, this information to solicit Merrill Lynch accounts and to divert the business of Merrill Lynch customers from Merrill Lynch to his new employer, Banc of America; and

(c) Kelly will otherwise continue to engage in acts constituting a breach of the terms of his Merrill Lynch contracts and Merrill Lynch policies, and other tortious conduct, including breach of fiduciary duty and unfair competition.

## COUNT I

## INJUNCTIVE RELIEF

24. The averments of Paragraphs 1 through 22 are incorporated by reference herein with the same force and effect as if set forth in full below.

25. By virtue of the foregoing, Merrill Lynch has demonstrated a likelihood of success on the merits and that a balancing of the equities favors the issuance of an injunction against Kelly.

26. Unless Kelly is temporarily and/or preliminarily enjoined from the foregoing conduct, Merrill Lynch will be irreparably harmed by:

a) disclosure of customer lists and other confidential information which are solely the property of Merrill Lynch and its clients;

b) loss of confidentiality of clients' records and financial dealings, loss of confidence and trust of clients, loss of goodwill, and loss of business reputation;

c) loss of personnel, damage to office stability, and a threat to the enforcement of reasonable contracts; and

(d) present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable.

27. Merrill Lynch has no adequate remedy at law.

WHEREFORE, Merrill Lynch respectfully requests that:

(1) A Temporary Restraining Order and/or a Preliminary Injunction issue immediately, enjoining Kelly, directly or indirectly, and whether alone or in concert with others, including any officer, agent, employee and/or representative of his new employer until hearing and thereafter until further Order of this Court, from:

a) soliciting or otherwise initiating any further contact or communication with any client of Merrill Lynch whom Defendant served or whose name became known to Defendant while in the employ of Merrill Lynch for the purpose of advising said clients of his new affiliation or for the purpose of inviting, encouraging or requesting the transfer of any accounts or business patronage from Merrill Lynch (excluding Defendant's family and relatives);

b) soliciting or otherwise initiating any further contact or communication with any client of Merrill Lynch whose records or information Defendant used in violation of paragraph 1 of his Agreement. This specifically includes any client whom Defendant may have contacted by mail, phone or otherwise through the use of any information obtained by Defendant while in the employ of Merrill Lynch (excluding Defendant's family and relatives);

c) using, disclosing, or transmitting for any purpose, including

solicitation of said clients, the information contained in the records of Merrill Lynch or concerning its clients, including, but not limited to, the names, addresses, and financial information of said clients; and

d) destroying, erasing, or otherwise making unavailable for further proceedings in this matter, or in any arbitration proceeding between the parties, any records or documents (including data or information maintained in computer media) in Defendant's possession or control which were obtained from or contain information derived from any Merrill Lynch records, which pertain to Merrill Lynch clients whom Defendant served or whose names became known to Defendant while employed by Merrill Lynch, or which relate to any of the events alleged in the Complaint in this action.

**COUNT II**

**BREACH OF CONTRACT**

28. The allegations of Paragraphs 1 through 26 are incorporated herein by reference with the same force and effect as if set forth in full below.

29. Kelly has violated and is continuing to violate, inter alia, paragraphs 1-2 of his Financial Consultant Employment Agreement and Restrictive Covenants with Merrill Lynch, (Exhibit **"A"**) as well as the other Merrill Lynch policies by which he agreed to abide (Exhibits **"B"** and **"C"**).

30. As a consequence of the foregoing, Merrill Lynch has suffered and will continue to suffer irreparable harm and loss.

## COUNT III

## MISAPPROPRIATION OF TRADE SECRETS

31. The allegations of Paragraphs 1 through 29 are incorporated herein by reference with the same force and effect as if set forth in full below.

32. The books and records of Merrill Lynch, the confidential information contained therein, and especially the identity of Merrill Lynch customers, including their names and addresses, financial statements, investment objectives, assets and/or securities held by these customers in their Merrill Lynch accounts and other financial information, are trade secrets of Merrill Lynch subject to protection under Florida law.

33. Merrill Lynch's customer information is a compilation of information used in Merrill Lynch's business, which gives Merrill Lynch an opportunity to obtain a competitive advantage over other competitors who do not know or have access to the contents of this customer list, and additional customer related information.

34. Merrill Lynch has taken more than adequate measures under the circumstances to maintain the secrecy of this information, including by having Kelly and other employees, as a condition of their employment, enter into the agreements described above prohibiting, inter alia, the use and disclosure of such information outside of Merrill Lynch.

35. Kelly is presently misusing Merrill Lynch's confidential customer information in furtherance of his employment with a direct Merrill Lynch competitor and in violation of his agreements not to do so.

36. The foregoing conduct of Kelly constitutes a misappropriation and misuse of Merrill Lynch's confidential, trade secret information in violation of Florida Law. See Fla. Stats. §812.081 and §688.002.

37. As a consequence of the foregoing, Merrill Lynch has suffered and will continue to suffer irreparable harm and loss.

**COUNT IV**

**BREACH OF FIDUCIARY DUTY**

38. The allegations of Paragraphs 1 through 36 are incorporated herein by reference with the same force and effect as if set forth in full below.

39. Kelly has violated the common law fiduciary duty of loyalty and the fiduciary duty arising under his employment contract and relationship with Merrill Lynch in that, while employed by Merrill Lynch, Kelly secretly planned to leave the employ of Merrill Lynch and schemed with others to deprive Merrill Lynch of its records and clients.

40. As a consequence of the foregoing, Merrill Lynch has suffered and will continue to suffer irreparable harm and loss.

**COUNT V**

**UNFAIR COMPETITION**

41. The allegations of Paragraphs 1 through 39 are incorporated herein by reference with the same force and effect as if set forth in full below.

42. The foregoing conduct of Kelly constitutes an unfair method of competition.

43. As a consequence of the foregoing, Merrill Lynch has suffered and will continue to suffer irreparable harm and loss.

WHEREFORE, by virtue of the foregoing acts complained of in Counts II, III, IV and V, Merrill Lynch demands judgment in its favor and against Kelly for temporary and preliminary injunctive relief pending arbitration to be held pursuant to Rule 10335(b) of the National Association of Securities Dealers Code of Arbitration Procedure.

Dated: September 3, 2003.

CONRAD & SCHERER, LLP
Counsel for Plaintiff,
Merrill Lynch, Pierce, Fenner & Smith Inc.
633 South Federal Highway
P.O. Box 14723
Fort Lauderdale, Florida 33302
(954) 462-5500
(954) 463-9244 (telecopy)

By: Douglas T. Marx
DOUGLAS T. MARX
Florida Bar No. 0089834

Of Counsel:

Joseph A. Dougherty, Esquire
Paul G. Kirk, Esquire
RUBIN & ASSOCIATES, P.C.
MCS Building, Suite 202
10 South Leopard Road
Paoli, PA 19301
(610) 408-2009 (telephone)
(610) 408-9080 (telecopy)

# "A"

# Financial Consultant
# Employment Agreement and Restrictive Covenants

In consideration of Merrill Lynch, Pierce, Fenner & Smith Inc. ("Merrill Lynch") employing me; compensating me; providing to me employment related benefits; training me; sponsoring me for the General Securities Examination; registering me with various exchanges; licensing me in various states; providing me with office facilities and sales support; executing, processing and clearing transactions; providing research and investment recommendations; supervising the development of my career; and other good and valuable consideration, the adequacy, sufficiency and receipt of which is hereby acknowledged, and intending to be legally bound, I hereby agree that:

1. All records, whether original, duplicated, computerized, memorized, handwritten, or in any other form, and all information contained therein, including names, addresses, phone numbers, and financial information of any account, customer, client, customer lead or prospect ("Account"), are confidential and are the sole and exclusive property of Merrill Lynch. This information, whether provided to me by Merrill Lynch or by any Account, is entrusted to me as an employee and sales representative of Merrill Lynch. I will not use this information or remove any such records from the Merrill Lynch office except for the sole purpose of conducting business on behalf of Merrill Lynch. I agree not to divulge or disclose this information to any third party and under no circumstances will I reveal or permit this information to become known by any competitor of Merrill Lynch either during my employment or at any time thereafter.

This information is extremely valuable to Merrill Lynch and Merrill Lynch takes all reasonable measures to maintain its confidentiality and to guard its secrecy. This information is not generally known outside Merrill Lynch and within Merrill Lynch this information is confidential and used only on a "need to know" basis. This information is developed and acquired by great expenditures of time, effort, and money. This information is unique and cannot be lawfully duplicated or easily acquired. Consequently, I agree that these records and the information contained therein are the property of Merrill Lynch and are deserving of trade secret status and protection.

2. If, at any time, I resign from Merrill Lynch, provoke my termination, or am terminated for cause, I agree that for a period of one year following my termination I will not solicit by mail, by phone, by personal meeting, or by any other means, either directly or indirectly, any Account whom I served or whose name became known to me during my employment at Merrill Lynch in any office and in any capacity. My agreement "not to solicit" means that I will not, during my employment and for a period of one year thereafter, initiate any contact or communication, of any kind whatsoever, for the purpose of inviting, encouraging or requesting any Account:

(a) to transfer from Merrill Lynch to me or to my new employer, or

(b) to open a new account with me or with my new employer, or

(c) to otherwise discontinue its patronage and business relationship with Merrill Lynch.

3. I agree that at all times during my employment I owe Merrill Lynch a duty of loyalty and a duty to act in good faith. I agree that during my employment I will not individually, or in combination with any other employee or competitor of Merrill Lynch, violate or breach the terms of this agreement.

4. In the event I breach any of the covenants of paragraphs 1, 2 or 3, I agree that Merrill Lynch will be entitled to injunctive relief. I recognize that Merrill Lynch will suffer immediate and irreparable harm and that money damages will not be adequate to compensate Merrill Lynch or to protect and preserve the status quo. Therefore, I CONSENT TO THE ISSUANCE OF A TEMPORARY RESTRAINING ORDER or A PRELIMINARY or PERMANENT INJUNCTION ordering:

(a) that I immediately return to Merrill Lynch all records whether original, duplicated, computerized, handwritten, or in any other form whatsoever, and that I be enjoined and restrained from using or disclosing any information contained in such records; and

(b) that, for a period of one year, I be enjoined and restrained from soliciting any Account whom I served or whose name became known to me while employed by Merrill Lynch, in any office and in any capacity; and

(c) that I be further enjoined and restrained, for a period of one year, from accepting business from any Account who was solicited in violation of paragraph 2 or whose records and information was used in violation of paragraph 1.

The above restraints shall apply to each and every Account whom I served or whose name became known to me while employed at Merrill Lynch, in any office and in any capacity, including without limitation, reassignments, walk-ins, call-ins, write-ins, transfers, referrals, prospects, cold-calls, seminars, mailers, lead lists, and etc. During my employment, some of the accounts I expect to develop and acquire are likely to be those of individuals I knew or was familiar with prior to joining Merrill Lynch ("Prior Acquaintances"). Nevertheless, because I will be acting as a representative of Merrill Lynch and I will be utilizing and benefiting from Merrill Lynch's goodwill, reputation, name recognition, and other assets and resources, I further agree that the Accounts of such Prior Acquaintances will be subject to the same restraints as all the other Accounts. The only exception will be my family and relatives.

5. For the purposes of paragraph 4, I agree to submit to, and confer exclusive jurisdiction on, the United States District Court or the State Court which has original jurisdiction for judicial district or county in which I last worked for Merrill Lynch. This Agreement shall be construed, governed by, and enforced in accordance with the laws of said jurisdiction. Further, in the event I voluntarily resign my employment, I will take no action (either by court proceedings or otherwise), to inhibit in any way Merrill Lynch's rights under paragraph 4 herein.

Continued

K

6. If after issuance of a TEMPORARY RESTRAINING ORDER or a PRELIMINARY or PERMANENT INJUNCTION the parties voluntarily agree, or are ordered, to arbitrate a dispute arising out of this Agreement, each party agrees and demands that any such arbitration be conducted in strict compliance with the applicable written Rules of Arbitration, as published, amended, effective, and in force at the time of my termination. The parties further agree that any Order of the Court shall stay in full force and effect until a Panel of Arbitrators can be properly constituted in accordance with the above referenced written Rules of Arbitration and until said Panel renders a full and final decision.

7. NOTHING HEREIN IS A PROMISE OF EMPLOYMENT FOR A FIXED TERM. MERRILL LYNCH MAY TERMINATE MY EMPLOYMENT FOR ANY REASON OR FOR NO REASON, JUST AS I MAY RESIGN AT ANY TIME.

8. I HAVE READ AND REVIEWED THIS EMPLOYMENT AGREEMENT AND RESTRICTIVE COVENANTS IN ITS ENTIRETY. I HAVE BEEN GIVEN AN OPPORTUNITY TO ASK MERRILL LYNCH QUESTIONS ABOUT IT. I HAVE ALSO BEEN GIVEN AN OPPORTUNITY TO CONSULT WITH AN ATTORNEY OF MY CHOICE. I FULLY UNDERSTAND THE TERMS OF THIS DOCUMENT AND KNOWINGLY AND FREELY AGREE TO ABIDE BY THEM.

IN ADDITION TO THE FOREGOING, I UNDERSTAND THAT I HAVE AN ADDITIONAL THIRTY DAYS FROM THE DAY I SIGN THIS AGREEMENT TO CONTINUE TO REVIEW IT AND SEEK LEGAL COUNSEL. AT ANY TIME WITHIN THIS THIRTY DAYS, I MAY RESCIND THIS AGREEMENT BY DISCONTINUING MY EMPLOYMENT WITH MERRILL LYNCH WITHOUT ANY OF THE PROVISIONS HEREIN BEING ENFORCED AGAINST ME. TO THE CONTRARY, HOWEVER, IF I CONTINUE MY EMPLOYMENT WITH MERRILL LYNCH BEYOND SAID THIRTY DAYS, MY CONTINUATION OF EMPLOYMENT WILL CONSTITUTE MY RATIFICATION AND COMPLETE ACCEPTANCE OF THE TERMS OF THIS AGREEMENT.

Date: 8/3/00 [signature]

Financial Consultant

Date: 8/3/00 [signature]

For Merrill Lynch, Pierce, Fenner & Smith Inc.

# "B"

MERRILL LYNCH, PIERCE, FENNER & SMITH INC.

# COMPLIANCE OUTLINE
# FOR
# PRIVATE CLIENT FINANCIAL ADVISORS

**JANUARY 2002**

This outline is a reminder and quick reference source. It does not replace the *Merrill Lynch & Co. Policy Manual*, the *Branch Office Policy Manual*, the *Procedures Manual for Branch Offices* or other more detailed sources. It is intended to help Financial Advisors avoid situations that can lead to complaints, regulatory problems or adverse publicity.

**You are required to review the outline and acknowledge your understanding of its contents annually.**

**IF YOU HAVE QUESTIONS ABOUT THIS MATERIAL OR OTHER COMPLIANCE RELATED ISSUES, PLEASE CONSULT WITH YOUR MANAGER OR COMPLIANCE OFFICER.**

## SIGNING DOCUMENTS FOR CLIENTS OR OTHERS PROHIBITED

**You may never**

- sign a client's or any other person's name to a document, regardless of intent,
- ask or allow another person to sign a document in the place of someone else (e.g., one joint account party signing for the other),
- accept documents you believe to have been signed in such a manner, or
- accept or maintain blank LOAs or documents signed by a client for future transactions.

## PRIVACY POLICY – CONFIDENTIALITY OF CLIENT INFORMATION

Merrill Lynch protects the confidentiality and security of client information. Employees must understand the need for the careful handling of this information. Merrill Lynch's privacy policy provides that

- We do not sell or rent clients' personal information.
- Employees may not discuss the business affairs of any client with any other employee, except on a strict need-to-know basis.
- We do not release client information, except upon a client's authorization or when required by law.
- Third-party service providers with access to client information are subject to the Merrill Lynch Privacy Policy.

Questions concerning the confidentiality or security of client information should be directed to your manager, Compliance Officer, or the Office of General Counsel.

## TAX ADVICE

You may not advise clients on tax issues. Clients seeking tax guidance should be advised to consult a qualified tax advisor. This does not prohibit the dissemination of general tax information included in Firm material prepared for that purpose.

## BLUE SKY LAWS

You must ensure, prior to recommending a purchase, that the security is qualified in the client's state of residence. NYSE or ASE-listed securities are generally qualified in all states. Most states permit solicitation of orders for non-qualified securities (as principal or agent) from certain institutional accounts. To verify the Blue Sky status of a security, access the SMI page in the Markets Book on TGA or call the Blue Sky Unit in Compliance.

**"C"**

## *Integrity*

*Our most important corporate asset is the great Merrill Lynch "tradition of trust" — our company's long-standing reputation for integrity in the marketplace. As beneficiaries of this great tradition, we will be tolerant of ordinary mistakes made in the course of business; we will not tolerate lapses in ethics or integrity.*

# MESSAGE FROM THE
# HAIRMAN
# ND VICE CHAIRMAN



; booklet has been prepared to make you and all the employees of
rill Lynch & Co., Inc. and its subsidiaries aware of our company's
mitment to the highest standards of business conduct. It is designed
alist your *personal* commitment to these standards. The responsibility
naintaining Merrill Lynch's reputation for integrity, our most important
orate asset, rests with each of us.

is shared commitment is the foundation of the Merrill Lynch
nciples, which not only underlie our success as a business and as
ividuals, but also define who we are and what we stand for.

avid H. Komansky

Stephen L. Hammerman

tephen L. Hammerman

# INTRODUCTION

Merrill Lynch is built on a foundation of trust — the trust of our clients, shareholders, regulators, and the general public. Maintaining this trust is the first obligation of every Merrill Lynch employee.

A critical first step is to observe the laws of each nation in which we operate. To ensure that we do so, we have established detailed policies and compliance procedures. These policies and procedures are set forth in detail in the *Merrill Lynch Policy Manual*, which contains more complete explanations of specific policies. Every department has a *Merrill Lynch Policy Manual* available for employee review.

It is not enough simply to obey the law. We must also act and behave in a manner that enhances our reputation and strengthens the trust that others have in our company. By adhering to exemplary standards of integrity, we enhance our reputation and our ability to do business.

We hope these guidelines will promote greater awareness and understanding of our ethical responsibilities. We must recognize, however, that no written code of ethics can ever guarantee adherence to high standards. This can be accomplished only if each of us undertakes daily to protect and enhance Merrill Lynch's most important corporate asset — our reputation for integrity.

# FEGUARDING THE ASSETS :D PROPERTY OF MERRILL NCH, OUR CLIENTS, AND IR SHAREHOLDERS

.ll Lynch is committed to maintaining and enforcing a strong, :ive system of internal controls to safeguard and preserve the assets r clients and our company. These administrative and accounting ol systems are mandated by law and are the responsibility of each in the Merrill Lynch organization and the management responsible ose groups. The cooperation of each and every employee is ssary for the systems to be effective.

usiness transactions require authorization at an appropriate agement level. Any employee who is responsible for the acquisition isposition of assets for the company, or who is authorized to incur lities on the company's behalf, must be careful not to exceed his or vested authority. Equally important, every employee must help ure that all business transactions are executed as authorized.

asactions must be properly reflected on the company's books and records. ry employee is involved, if not in the authorization or execution of iness transactions, in some level or kind of reporting. This may include ording travel and entertainment expenses or recording work hours on a e card. It is important that all reporting be done honestly and accurately I that employees cooperate fully with both internal and independent audits.

errill Lynch's assets include more than capital; they also include its ilities, equipment, information, technology, business plans, ideas for new oducts and services, trade secrets, inventions, copyrightable materials, and ient lists. It is critical that all employees safeguard such assets in cordance with corporate policies. Employees are expected to use company sets only for the purposes intended — never for their own personal enefit, except when particular assets are approved for general employee or ublic use. This policy extends even to business opportunities that come to mployees as a result of their employment. These are considered proprietary pportunities belonging to Merrill Lynch. Employees should be aware that tate and federal laws, regulatory controls, and contractual and licensing bligations for such assets govern our actions as well as the actions of the company's vendors and consultants.

*All employees [illegible] responsible for safeguarding the assets of our [illegible] and our [illegible] acting in [illegible] with our [illegible]*

*Merrill Lynch employees with access to non-public information must keep this information confidential and ensure that it is not used improperly for personal gain or any other reason.*

# PROPER USE OF INFORMATION

In the conduct of our business, Merrill Lynch and its employees receive a great deal of non-public information. Much of this information may be sensitive — with a potential impact on market conditions, negotiations, strategic positioning, or relationships with clients, competitors, or vendors. It is essential, therefore, that we maintain confidentiality and ensure that such information is used only for appropriate purposes.

Securities laws specifically prohibit disclosure of non-public information to others. Merrill Lynch's policy is to limit disclosure of such confidential information to those with a need to know. Non-public information must not be passed on to employees who are not directly involved in a project or to family members (including spouses), friends, clients, or others.

Securities laws further prohibit any trading in a security by a person in possession of material non-public information affecting that security. Our employees are not permitted personally to benefit from advance knowledge. At times, this may put some of our employees at a disadvantage in the marketplace. Anyone with ongoing possession of non-public information may be unable to trade personally in the securities of the companies about which he or she has non-public information.

Similarly, employees should also refrain from acting on information concerning publicly traded securities received in their individual capacities if there is reason to believe the information is derived from non-public sources.

The policies on inside information are not limited to the securities area. All employees must exercise equal care not to misuse any non-public corporate information, including client lists, information about Merrill Lynch personnel, and business plans and ideas.

For additional guidance in specific situations, you should consult the Office of General Counsel.

# "D"

**Merrill Lynch**

**Conflict of Interest**

**To:** Human Resources Department

1. This is to acknowledge my awareness of the Merrill Lynch policy which states that I must not maintain a security and/or commodity investment account in any category with any other firm, and that I will immediately terminate any such accounts. This applies to accounts which I have a direct or indirect interest or over which I exercise control.

   I also understand that I must have prior written approval to participate in:
   - Outside employment which presents a conflict of interest with my position at Merrill Lynch
   - Directorships in private corporation (public corporate directorships are strictly prohibited).
   - Private investments in securities which can not be purchased through stock exchange(s) member firms or a bank.
   - Outside speaking and writing activities related to the securities and/or commodities business.

2. I agree that I will not, during or after my employment with Merrill Lynch, use or disclose to another any confidential information or business secrets relating to Merrill Lynch. I agree to disclose to Merrill Lynch promptly any and all inventions and copyrightable material made by me in the scope of my employment and agree that they shall be the exclusive property of Merrill Lynch. I will, during and after my employment with Merrill Lynch, without charge by me, but at Merrill Lynch's sole expense, sign and deliver all writings and perform all acts required in order to vest in Merrill Lynch all rights in all such inventions and copyrightable material and in order for Merrill Lynch to make and prosecute patent applications and secure its copyright rights.

3. I have read and agree to abide by this statement of Merrill Lynch & Co. policy. I also understand completion of this form is a condition of employment.

CBK — Initials    7/16/00 — Date

**GUIDELINES FOR BUSINESS CONDUCT**

I have been given the Guidelines for Business Conduct brochure which explains in some detail the basic tenets of Merrill Lynch's commitment to the highest standards of business conduct. I acknowledge that I have read and understand the guidelines, Merrill Lynch's commitment, and will work actively to keep it. By signing this document, I accept the obligation to follow the guidelines.

CBK — Initials    7/15/00 — Date

**GUIDELINES FOR ELECTRONIC COMMUNICATIONS**

I have been given the Guidelines for Electronic Communications brochure which explains in some detail Merrill Lynch's commitment to the highest standards of business conduct in the electronic medium. I acknowledge that I have read and understand the guidelines, Merrill Lynch's commitment, and will work actively to keep it. By signing this document, I accept the obligation to follow the guidelines.

CBK — Initials    7/15/00 — Date

Christopher B Kelly — Print Name    [illegible] — Social Security #    [signature] — Signature

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

MERRILL LYNCH, PIERCE, FENNER & SMITH, INC.

03-80829

**DEFENDANTS**

CHRISTOPHER B. KELLY

MAGISTRATE JUDGE SELTZER

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF ______
(EXCEPT IN U.S. PLAINTIFF CASES)

CIV-DIMITROULEAS

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT ______
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Douglas T. Marx, CONRAD & SCHERER,
P.O.Box 14723, Ft. Lauderdale, FL
(954)462-5500

ATTORNEYS (IF KNOWN) David H. Brodie, Esq.
Mandel, Weisman & Brodie, PA
2101 Corporate Blvd., Boca Raton, FL 33431

(d) CIRCLE COUNTY WHERE ACTION AROSE: DADE, MONROE, BROWARD, (PALM BEACH), MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE HIGHLANDS

**II. BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

9:03CV80829 WPD-Seltzer

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**V. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

**A CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- B☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- B☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☒ 190 Other Contract
- ☐ 195 Contract Product Liability

**A REAL PROPERTY**
- ☐ 210 Land Condemnation
- B☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**A TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury Med Malpractice
- ☐ 365 Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**A CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/Accommodations
- ☐ 444 Welfare
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- B☐ 510 Motions to Vacate Sentence

HABEAS CORPUS:
- B☐ 530 General
- A☐ 535 Death Penalty
- B☐ 540 Mandamus & Other
- B☐ 550 Civil Rights
- B☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- B☐ 610 Agriculture
- B☐ 620 Other Food & Drug
- B☐ 625 Drug Related Seizure of Property 21 USC 881
- B☐ 630 Liquor Laws
- B☐ 640 R.R. & Truck
- B☐ 650 Airline Regs
- B☐ 660 Occupational Safety/Health
- B☐ 690 Other

**A LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt. Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- A☐ 791 Empl. Ret. Inc. Security Act

**A BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**A PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**B SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- A☐ 870 Taxes (U.S. Plaintiff or Defendant)
- A☐ 871 IRS – Third Party 26 USC 7609

**A OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- B☐ 430 Banks and Banking
- B☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions

A OR B

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

Claim for breach of contract and injunctive relief based on diversity, 28 USC 1332

LENGTH OF TRIAL
via 2 days estimated (for both sides to try entire case)

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ YES ☒ NO

**VIII. RELATED CASE(S)** ~~(See instructions)~~:
**IF ANY** JUDGE ______ DOCKET NUMBER ______

DATE 9-2-03 SIGNATURE OF ATTORNEY OF RECORD Douglas T.

**FOR OFFICE USE ONLY**

RECEIPT # 521013 AMOUNT 150 APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______